UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IVIN ROMON RICHARDSON,
     Plaintiff,

v.                           Case No.: 3:18cv2004/LAC/ZCB

JENNIFER BECK,
     Defendant.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights case filed under 42 U.S.C. § 1983.  Plaintiff is a state prisoner.  Defendant, Jennifer Beck, is a state probation officer who previously supervised Plaintiff.  Plaintiff claims that Defendant violated the Fourth and Fourteenth Amendments when she sought his arrest for violating probation. Defendant has moved to dismiss.  (Doc. 15).  Plaintiff has responded in opposition. (Doc. 68).  For the reasons below, Defendant's motion to dismiss should be granted.

## I.    Background

Defendant was Plaintiff's probation officer in Escambia County case no. 1999-CF-3228.  (Docs. 1 at 5; 15 at 2).  As part of his probation, Plaintiff was required to "comply with all instructions" given to him by a probation officer.  (Doc. 15-3 at 1).  On April 18, 2016, Plaintiff went to the probation office.  (Docs. 1 at 5; 15-2).  Because Defendant was not in the office that day, her colleague, probation

officer Brandi Smith,[1] met with Plaintiff.  (*See id.*).  According to Plaintiff, Officer

Smith provided Plaintiff with a date on which to return for a meeting with Defendant.

(Doc. 1 at 5).  Officer Smith, however, informed Defendant that Plaintiff had failed

to follow instructions given to him.  That led to Defendant seeking a warrant for

Plaintiff's arrest on April 20, 2016.  In the affidavit submitted in support of the

warrant, Defendant wrote the following:

> Violation of Condition (8) of the Order of Probation, by failing to comply with all instructions given to him by the probation officer, and as grounds for belief that the offender violated his probation, Officer Beck states that on April 18, 2016, the offender was instructed by Officer Brandi Smith to remain in the office lobby which he failed to carry out this instruction by leaving the Probation & Parole Office located at 3101 North Davis Hwy Pensacola, Fl without permission from Officer Brandi Smith.

(Doc. 15-2 at 1).[2]  In the violation report, Defendant further explained how the

alleged violation occurred:

> On 5/23/02 and 12/5/13, the offender was instructed that "You will promptly and truthfully answer all inquiries directed to you by the Court or the Probation Officer, and allow the Officer to visit in your home, at your employment site or elsewhere, and you will comply with all

---

[1] Plaintiff's complaint states the probation officer's name is "Belinda Smith," but court documents show her name is "Brandi Smith."

[2] The Court may take judicial notice of the court file and documents in Plaintiff's state court cases under Fed. R. Evid. 201 without converting the motion to dismiss into a motion for summary judgment.  *See, e.g.*, Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."); *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1077 n.9 (11th Cir. 2013) (taking judicial notice of state court documents at the motion to dismiss stage); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999) (affirming district court decision to take judicial notice of publicly available government records at the motion to dismiss stage).

> instructions he may give you," which he has failed to do.  On 4/18/16 at approximately 8:50 a.m., the offender reported to the Probation Office located at 3103 N. Davis Highway.  Upon reporting to the Probation Office, he spoke with Officer Brandi Smith.  He indicated to her he would like to transfer his probation to Alabama.  He was very adamant with Officer Smith he has no family support here in Escambia County.  He listed on his monthly report the address of [redacted].  Officer Smith instructed the offender to return to the lobby and remain there while she spoke with a supervisor and reviewed his file about a possible transfer.  Approximately 10 minutes later Officer Smith returned to the lobby and called the offenders [sic] name to obtain more information.  At that time she was told by another offender that he was in the restroom.  Approximately 5 minutes later she was informed that the offender was ready to speak with her.  She returned to the lobby called the offender's name in which there was no answer and at that time Officer Smith discovered that he had left the building without permission.  The offender never returned to the Probation Office or made any further contact with Officer Smith or his supervising officer.

(Doc. 15-3 at 1).  After considering the affidavit and violation report, a state court judge issued a warrant for Plaintiff's arrest on April 20, 2016.  (Doc. 15-2 at 2-3).

On April 21, 2016, Plaintiff reported to the probation office.  (Doc. 1 at 5).  Defendant allegedly asked Plaintiff "how [] he got out of jail," and told him that he "was going back."  (*Id.*).  On April 25, 2016, Defendant amended the paperwork to allege a second violation of probation against Plaintiff for failing a drug test.  (Docs. 15-5, 15-6).

Pursuant to the warrant, Plaintiff was arrested on April 27, 2016.  (Doc. 15-8).  A judge found probable cause for the probation violations, and Plaintiff was held in custody until his probation violation hearing.  (Docs. 15-4;1 at 6).  Plaintiff's violation hearing was held on September 29, 2016.  (Docs. 1 at 6; 15-7).  At the

3

conclusion of the hearing, the state court found that (1) Plaintiff had not violated probation by failing to comply with instructions given by Officer Smith, and (2) Plaintiff had violated his probation by failing a drug test. (Doc. 15-7 at 1). Plaintiff's probation was terminated, and he was sentenced to a term of imprisonment. (*Id.* at 3).

Plaintiff now alleges that Defendant's conduct violated the Fourth Amendment's prohibition against unreasonable searches and seizures and the Fourteenth Amendment's due process clause. (Doc. 1 at 7). More specifically, Plaintiff claims that Defendant "lacked probable cause to initiate" his arrest because she was not present when Plaintiff allegedly disobeyed Officer Smith's instructions. (*Id.* at 6). According to Plaintiff, Defendant violated the Fourth Amendment by submitting an affidavit in support of an arrest warrant because she lacked "personal knowledge" of Plaintiff's conversation with Officer Smith. (*Id.*). Plaintiff further claims that Defendant "intentionally" and falsely stated in the affidavit that she had had witnessed Plaintiff disobey Officer Smith. (*Id.*). As relief, Plaintiff seeks $100,000 in damages. (*Id.* at 7).

## II.   Procedural History

Plaintiff filed this action on August 21, 2018. (Doc. 1). And Defendant moved to dismiss on March 16, 2020. (Doc. 15). Along with her motion to dismiss, Defendant filed several exhibits relating to Plaintiff's arrest and probation revocation

proceedings. (*Id.*). The undersigned's predecessor, U.S. Magistrate Judge Elizabeth Timothy, ordered Plaintiff to respond to Defendant's motion within thirty days. (*Id.*). Between April 2020 and January 2021, Plaintiff sought and received seven extensions of the response deadline. (*See* Docs. 17, 26, 29, 33, 36, 39, 41; *see also* Docs. 19, 27, 31, 35, 37, 40, 42).

After Plaintiff failed to respond to Defendant's motion to dismiss, Judge Timothy recommend dismissing this case without prejudice for Plaintiff's "failure to comply with an order of the court and failure to prosecute." (Docs. 44 at 4, 46). The District Judge adopted that recommendation, and this matter was dismissed for Plaintiff's failure to comply with the order directing him to respond to Defendant's motion to dismiss. (Doc. 44). Plaintiff appealed the dismissal to the U.S. Court of Appeals for the Eleventh Circuit. (Doc. 48).

The Eleventh Circuit reversed. In its decision, the Eleventh Circuit explained that the dismissal was effectively a dismissal with prejudice because the statute of limitations had run. (Doc. 60 at 4-5). Because the dismissal order did not expressly consider the availability and sufficiency of lesser sanctions, the Eleventh Circuit remanded this matter for further proceedings. (*Id.* at 6).

Defendant's motion to dismiss was never ruled on, and it remained pending when the case was dismissed for Defendant's failure to follow a court order. (*See* Doc. 62). After the Eleventh Circuit's remand, the Court provided Plaintiff with an

opportunity to respond to the motion to dismiss.  (Doc. 64).  He has done so (Doc. 68), and this matter is ripe for resolution.

### III.   Discussion

**A. Defendant is entitled to sovereign immunity.**

Defendant first argues that any official capacity claims against her should be dismissed because of sovereign immunity.  Plaintiff's complaint does not specify whether he is suing Defendant in her official or individual capacity.  The Court, therefore, assumes Plaintiff is suing Defendant in both capacities.  Absent waiver or congressional abrogation (neither of which is present here), a lawsuit seeking damages from a state employee in her official capacity is barred by the doctrine of state sovereign immunity.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65, 71 (1989) (holding that state sovereign immunity bars a § 1983 suit against a state and its officials in their official capacities).

Defendant, a state probation officer, is an employee of the State of Florida who is being sued for damages.  An official capacity lawsuit against Defendant is effectively a lawsuit against the State of Florida.  Accordingly, sovereign immunity prevents Plaintiff from recovering damages from Defendant in her official capacity.  *See, e.g.*, *Cook v. Florida*, 607 F. Supp. 606 (S.D. Fla. 1985) (holding sovereign immunity barred plaintiff's official capacity damages claim against her state

probation officer). Thus, any official capacity claims against Defendant should be dismissed.

### B. Defendant is entitled to qualified immunity on Plaintiff's Fourth Amendment malicious prosecution claim.

Defendant next argues that Plaintiff's individual capacity claims are barred by qualified immunity. "Qualified immunity protects government employees from suit in their individual capacities for discretionary actions in which they engage in the course of their duties." *Alcocer v. Mills*, 906 F.3d 944, 950-51 (11th Cir. 2018) (cleaned up). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). At the motion to dismiss stage, a court looks to the allegations in the complaint to determine if qualified immunity applies. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

A government official asserting qualified immunity has the initial burden to prove that she was acting within the scope of her discretionary authority when the alleged wrongful conduct occurred. *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020). Here, Defendant was acting within the scope of her discretionary authority when she prepared the arrest warrant affidavit alleging that Plaintiff violated probation. *See Hyland v. Sec'y for Dep't of Corr.*, No. 06-14455, 2007 WL 2445972, at *3 (11th Cir. Aug. 29, 2007) (stating that probation officer was "engaged in a discretionary function when he caused [the plaintiff] to be arrested

7

based on alleged probation violations"); *see also O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (same).

Because Defendant was acting within the scope of her discretionary authority, the burden shifts to Plaintiff to show that Defendant is not entitled to qualified immunity. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). To make that showing, Plaintiff must (1) establish a violation of a constitutional right, and (2) show that the right violated was "clearly established" at the time of the violation. *Baxter v. Roberts*, 54 F.4th 1241, 1256 (11th Cir. 2022). The Court may "decide these issues in either order, but, to survive a qualified-immunity defense, the plaintiff must satisfy both showings." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (cleaned up). As explained below, Plaintiff has failed to establish a violation of his constitutional rights. Thus, Defendant is entitled to qualified immunity.

Plaintiff has first claimed that Defendant violated the Fourth Amendment by unlawfully seeking his arrest for a probation violation. Because Plaintiff's arrest in this case occurred pursuant to a state court arrest warrant, Plaintiff's Fourth Amendment claim will be considered as a malicious prosecution claim as opposed to a false arrest claim. *See Spinnenweber v. Williams*, 825 F. App'x 730, 732-33 (11th Cir. 2020) (explaining the difference between a false arrest claim and a malicious prosecution claim); *see also Johnson v. Shannon*, 484 F. Supp. 3d 1344, 1349 (N.D. Ga. 2020) (analyzing claim alleging probation officer unlawfully

obtained an arrest warrant for the plaintiff's violation of probation as a malicious prosecution claim). That is so because a "claim of false arrest . . . under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). A malicious prosecution claim, on the other hand, involves "a seizure pursuant to legal process." *Id*. (cleaned up); *see also Cooley Woods*, __ F. Supp. 3d. __, 2022 WL 17549789, at *3 (N.D. Ga. 2022) ("Because Plaintiff was arrested pursuant to an arrest warrant, his Fourth Amendment claim is for malicious prosecution, not false arrest.").

To prevail on a malicious prosecution claim, a plaintiff must make two showings. First, a plaintiff must show "(1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020). Second, a plaintiff must show the "elements of the common law tort of malicious prosecution." *Id*. Doing that requires proof that "the officials instituted criminal process against him with malice and without probable cause and that the broader prosecution against him terminated in his favor." *Id*. (cleaned up).

Looking to the first requirement, Plaintiff here has failed to sufficiently establish that the legal process (i.e., the arrest warrant) justifying his seizure was constitutionally infirm. To prove that an arrest warrant was constitutionally infirm, a plaintiff must establish either that the officer who applied for the warrant "should

have known that [the] application failed to establish probable cause" or that "an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Id*. at 1296 (cleaned up). "Negligent misrepresentation is not enough—even if it leads to unlawful detention [of plaintiff.]" *Hilmo v. Jackson*, No. 22-13015, 2023 WL 4145495, at *1 (11th Cir. June 23, 2023).

Plaintiff has not sufficiently established that Defendant "should have known" that the affidavit she submitted to the state court judge failed to establish probable cause. Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972)). Rather, probable cause is a "fluid concept— turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Although "incapable of precise definition or quantification into percentages . . . . the substance of . . . probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (cleaned up).

10

Here, the warrant affidavit submitted by Defendant facially established probable cause to believe Plaintiff violated his probation. Plaintiff was on probation, and it is undisputed that as a condition of probation he was required to follow the instructions of probation officers. (Doc. 15-3 at 1). The affidavit stated that Plaintiff was instructed by Officer Smith (a probation officer) to remain in the lobby of the probation office, and Plaintiff disobeyed that instruction by leaving. (*Id*.). The information in the affidavit was, therefore, sufficient to warrant a person of reasonable caution in the belief that Plaintiff committed a probation violation.

In attempt to avoid that conclusion, Plaintiff has argued that the warrant affidavit lacked probable cause because it was based on information that was not personally observed by Defendant. (Doc. 1 at 6). Although Plaintiff is correct that Defendant's affidavit contained information reported to her by Officer Smith, there was nothing improper about one officer relying on information provided by another to establish probable cause. Law enforcement officers are rarely eyewitnesses to every fact that is recited in an affidavit to establish the elements of an offense or probation violation. And it is well settled that officers may rely on information provided by others to establish probable cause. *See, e.g.*, *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978) (stating that "probable cause may be founded upon hearsay and upon information received from informants, as well as information within the affiant's own knowledge"); *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir.

11

1997) ("Probable cause exists if the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.") (cleaned up); *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 946 (11th Cir. 2008) (explaining that "when an arresting officer was absent for a significant portion of events giving rise to probable cause, the arresting officer may rely upon his fellow officer's judgment about probable cause"); *Delgado v. Miami-Dade Cnty.*, 456 F. Supp. 2d 1234, 1238-39 (S.D. Fla. 2006) (finding defendant was entitled to qualified immunity when he arrested the plaintiff based on information given to him from other officers and stating "the 'fellow officer rule' is operative in the Eleventh Circuit and the State of Florida and permits an arresting officer to rely on information supplied by fellow officers to effectuate an arrest") (cleaned up).  Thus, contrary to Plaintiff's argument, Defendant did not violate the Fourth Amendment by seeking an arrest warrant based on information she did not personally observe.

Additionally, Plaintiff makes nothing but conclusory allegations that Defendant knew there was no probable cause supporting an arrest warrant and that she "falsely" completed the affidavit.  (Doc. 1 at 6).  He bases these conclusory allegations on the mere fact that Defendant did not have personal knowledge of the situation and instead relied on information from Officer Smith.  But as stated above,

12

there is no requirement that an affiant personally observe everything discussed in an arrest warrant affidavit.

Moreover, Plaintiff has failed to provide sufficient factual information to plausibly allege that Defendant either deliberately included a falsehood in the affidavit or recklessly disregard the truth when she submitted the affidavit. Plaintiff argues that Defendant falsely stated she was present and witnessed Plaintiff disobey Officer Smith. (Doc. 1 at 6). But the affidavit never says that Defendant personally observed Plaintiff disobey Officer Smith's instructions. Here is what the affidavit says: "[T]he offender was instructed by Officer Brandi Smith to remain in the office lobby which he failed to carry out this instruction by leaving the Probation & Parole Office . . . without permission from Officer Brandi Smith." (Doc. 15-2 at 1). It is clear from this language that Defendant did not falsely state in the affidavit that she witnessed Plaintiff's interaction with Officer Smith.

Even if what Officer Smith told Defendant about the interaction (which Defendant included in the affidavit) was false, Plaintiff has failed to plausibly allege that Defendant either knew that the information was false or acted with reckless disregard as to the truthfulness of the information. As the Eleventh Circuit has recognized, officers "who reasonably but mistakenly conclude that probable cause is present are entitled to immunity," even when the officer fails to investigate all of

the facts before authoring the affidavit. *Washington v. Rivera*. 939 F.3d 1239, 1249 (11th Cir. 2019).

The fact that Plaintiff was ultimately found not to have willfully violated the terms of his probation by disobeying Officer Smith does not mean Defendant unlawfully sought Plaintiff's arrest. The standard for issuance of a warrant is probable cause, which is lower than the preponderance of the evidence standard that the State must ultimately satisfy to establish a probation violation. *See Faulstick v. State*, 333 So. 3d 797, 799 (Fla. 5th DCA 2022) (explaining that the "State has the burden to prove by a preponderance of the evidence that the defendant violated a condition of probation willfully and substantially") (cleaned up). The State's failure to meet its preponderance of the evidence burden at the violation hearing does not mean that Defendant lacked probable cause to seek a warrant for the violation. *See Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990) ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself.") (cleaned up).

A malicious prosecution claim requires a plaintiff to show that the officer who applied for the warrant "should have known that [the] application failed to establish probable cause" or that "an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Laskar v. Hurd*, 972 F.3d 1278, 1296 (11th Cir. 2020).

14

Here, Plaintiff has failed to plausibly allege that Defendant knew or should have known that the warrant lacked probable cause.  Nor has Plaintiff plausibly alleged that Defendant intentionally or recklessly made misstatements in the affidavit.[3] Thus, Plaintiff has failed to establish that Defendant committed a constitutional violation by submitting the affidavit in support of a warrant for Plaintiff's arrest.[4] Because Defendant's assertion of qualified immunity cannot be overcome absent a constitutional violation, Plaintiff's Fourth Amendment claim against Defendant should be dismissed.[5]

### C. Plaintiff has failed to state a plausible Fourteenth Amendment claim

Plaintiff has also asserted a Fourteenth Amendment due process claim stemming from his arrest.  (Doc. 1 at 7).  The Supreme Court has recognized that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of [Fourteenth Amendment]

---

[3] Officer Smith is not a defendant in this case.  Thus, the issue is not whether Officer Smith may have made a false statement in the affidavit—the issue is whether Defendant knew or should have known that the information provided by Officer Smith was false.

[4] Even if Plaintiff had plausibly alleged that the legal process justifying his arrest was constitutionally infirm, his malicious prosecution claim would still fail because he has not plausibly alleged that Defendant acted with "malice" when she sought the arrest warrant—something that is required for a malicious prosecution claim. *Laskar*, 972 F.3d at 1284.

[5] Because Plaintiff has failed to establish a constitutional violation, it is unnecessary to consider the clearly established right prong of the qualified immunity test.

substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (cleaned up). Because Plaintiff's arguments regarding the legality of his arrest directly arise under the Fourth Amendment, his Fourteenth Amendment due process claim should be dismissed. *See Jordan v. Mosley*, 298 F. App'x 803, 805-806 (11th Cir. 2008) (stating that the district court "correctly determined that [the plaintiff's false arrest] claims should be analyzed under the Fourth Amendment, not the Due Process Clause of the Fourteenth Amendment"); *Spiker v. Allegheny Cnty. Bd. of Prob. & Parole*, 920 F. Supp. 2d 580, 594 (W.D. Pa. 2013) (dismissing the plaintiff's Fourteenth Amendment claim because the plaintiff's claims for false imprisonment, false arrest, and malicious prosecution were properly analyzed under the Fourth Amendment).

## IV.   Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that Defendant's motion to dismiss (Doc. 15) be **GRANTED** and the Clerk of Court be directed to close this case.

At Pensacola, Florida this 27th day of July 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.